# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| ~~Redacted~~  ~~Redacted~~ | ) Case No.  25  MJ  85 |
| Jeronis Montero, Javier Cartagena-Colon, and Leonardo Perez | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ June 2022 - May 2, 2025 _____ in the county of _____ Milwaukee _____ in the _____ Eastern _____ District of _____ Wisconsin _____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 841(a)(1), 843(b), 846, and 18 USC 924(c)(1)(A) | manufacture, distribute, and possess with intent to distribute a controlled substance, use of a communication facility to commit a felony drug crime, and conspiracy to do the same, and possession of a firearm in furtherance |

This criminal complaint is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

Tyler Fink
Digitally signed by Tyler Fink
Date: 2025.06.06 10:02:44 -05'00'

_____
*Complainant's signature*

Tyler Fink, Postal Inspector (USPIS)
_____
*Printed name and title*

Sworn via telephone; transmitted via email
pursuant to Fed. R. Crim. 4.1

Date: _____ 06/06/2025 _____

_____
*Judge's signature*

City and state: _____ Milwaukee, Wisconsin _____

William E. Duffin, U.S. Magistrate Judge
_____
*Printed name and title*

WARRANTS_000001

<u>**AFFIDAVIT IN SUPPORT OF CRIMINAL**</u>
<u>**COMPLAINT AND SEARCH WARRANTS**</u>

I, Tyler Fink, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.      I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have been employed as a full-time law enforcement officer since June 2014.

2.      The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, Section 3061 with the enforcement of laws governing the use and movement of the United States Mail, including but not limited to, the misuse and fraudulent schemes involving the mail, and crimes relating to mail fraud, identity theft, and narcotics trafficking involving the U.S. Mail.

3.      I am currently assigned to the USPIS Milwaukee Office, Multi-function team, as well as the High Intensity Drug Trafficking Area ("HIDTA") Interdiction Task Force. The USPIS Milwaukee Office investigates USPS customers involving narcotics, prohibited mailings, controlled substances, prescription medications, and other matters related to the Postal Service. I have intercepted numerous parcels, which were found to contain narcotics, firearms, or proceeds of narcotics trafficking and other evidence of criminal activity.

4.      I hold a Bachelor of Science degree in Mechanical Engineering from the University of Missouri – St. Louis. In 2014, I completed the Peace Officer Standards and Training certification at the St. Louis County and Municipal Police Academy while employed as a City of Creve Coeur Police Officer. While working as a Police Officer, I received extensive training in narcotics investigations. In 2017, I graduated from the United States Postal Inspection Service ("USPIS") Basic Inspector Training program. I received advanced training by the USPIS in the

WARRANTS_000001.02

investigation of controlled substances and proceeds being transported through the United States mail.

5.   I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1), 843(b), and 846 (manufacture, distribute, and possess with intent to distribute a controlled substance, use of a communication facility to commit a felony drug crime, and conspiracy to do the same), and other related offenses. More specifically, my training and experience includes the following:

a.   I have used informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.   I have also relied upon informants to obtain controlled substances from drug traffickers, and have made undercover purchases of controlled substances;

c.   I have participated in several search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.   I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug traffickers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.   I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.   I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.   I know that drug traffickers commonly have in their possession, and at their residences and other storage locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

Case 2:25-mj-00085-WED    Filed 06/10/25    Page 3 of 74    Document 2

WARRANTS_000001.03

h.  I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement officials;

i.  I know large-scale drug traffickers often purchase or title their assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

j.  I know large-scale drug traffickers maintain on-hand large amounts of U.S. currency to maintain and finance their ongoing drug business;

k.  I know it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, and receipts relating to the purchase of financial instruments, and/or the transfer of funds and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. I also know that the aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the traffickers have ready access to them;

l.  I know it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their businesses, storage facilities, or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities or rival drug traffickers. These secure locations include, but are not limited to safes, briefcases, purses, locked filing cabinets, and hidden storage areas in natural voids of a residence;

m.  I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transferring, concealing, and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages), businesses, or other locations over which they maintain dominion and control;

n.  I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), computers, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record or store the information described in the items above, as well as conduct drug trafficking activities;

3

WARRANTS_000001.04

o. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency;

p. I know drug traffickers commonly maintain addresses or telephone numbers in books or papers that reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization; and

q. I know drug traffickers take (or cause to be taken) and maintain photographs of themselves, their associates, their property, and their drugs.

6.      In addition, during the course of residential searches, I and other agents have also found items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the residence. Such identification evidence is typical of the articles people commonly maintain in their residences, such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys.

7.      I have been the affiant on over 90 warrants in federal court. Based on my training, personal experience, on the job training, and working with other USPIS Postal Inspectors and HIDTA drug task force officers, I know narcotics, drugs, paraphernalia, controlled substances, firearms, prescription medications, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through the USPS system, and I am familiar with many of the methods used by individuals who attempt to use the USPS to illegally distribute controlled substances and prescription medications.

8.      This affidavit is based upon my personal knowledge, training, and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit

4

WARRANTS_000001.05

is also based upon police reports, official records, witness statements, recorded statements, surveillance video, and public records which I consider to be reliable as set forth herein.

## DEFENDANTS FOR CRIMINAL COMPLAINT

9.    At this time, I seek a criminal complaint for the following subjects:

| NAME | DATE OF BIRTH |
|------|---------------|
| Redacted | |
| Redacted | |
| Jeronis MONTERO, a.k.a. "Nonie" | 12/24/1997 |
| Javier CARTAGENA-COLON | 2/25/1987 |
| Leonardo PEREZ, a.k.a. "Leo" | 4/1/2004 |

## PREMISES WARRANTS

10.    For the reasons discussed herein, there is probable cause to believe that located at and in the following properties (collectively, "**SUBJECT PREMISES**"), more fully described in Attachments A1, A2, A3, A4, A5, A6, A7, and A8 (collectively, "Attachment A"), are items that constitute evidence of drug trafficking, including violations of Title 21, United States Code, Sections 841(a)(1) (manufacture, distribution, and possession with intent to distribute a controlled substance), 846 (conspiracy to manufacture, distribute, and possess with intent to distribute a controlled substance), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance) and Title 18, United States Code, Section 924(c)(1)(A), by                Redacted                ,        Redacted        Jeronis MONTERO, Javier CARTAGENA-COLON, Leonardo PEREZ, and others:

5

WARRANTS_000001.06

A1.     214 East Clarke Street, Upper, Milwaukee, Wisconsin 53212 ("**SUBJECT PREMISE 1**")

A2.     2475 South 5th Street, Milwaukee, Wisconsin 53207 ("**SUBJECT PREMISE 2**")

A3.     719 West Madison Street, Milwaukee, Wisconsin 53204 ("**SUBJECT PREMISE 3**")

A4.     2158 South 18th Street, Milwaukee, Wisconsin 53215 ("**SUBJECT PREMISE 4**")

A5.     2832 South 33rd Street, Milwaukee, Wisconsin 53215 ("**SUBJECT PREMISE 5**")

A6.     6519 West Wisconsin Avenue, Wauwatosa, Wisconsin 53213 ("**SUBJECT PREMISE 6**")

A7.     A black 2018 Chevrolet Impala bearing Wisconsin license plates AUC9843 **("SUBJECT PREMISE 7")**

A8.     A gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 **("SUBJECT PREMISE 8").**

11.     I further submit that evidence relating to this crime, more particularly described in Attachment B, can be found in the **SUBJECT PREMISES**, more particularly described in Attachment A. This affidavit is intended to show only that there is sufficient probable cause for the requested criminal complaint and warrants and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### Background

12.     Beginning October 2022, the USPIS, the Drug Enforcement Administration ("DEA"), and Homeland Security Investigations ("HSI") have been investigating ▌Redacted▐ ▌Redacted▐ and ▌Redacted▐ who are based in Puerto Rico. In summary, the investigation revealed ▌Redacted▐ and ▌Redacted▐ mail

6

WARRANTS_000001.07

kilograms of cocaine in large distribution quantities into the Eastern District of Wisconsin from Puerto Rico to Jeronis MONTERO, Javier CARTAGENA-COLON, and Leonardo PEREZ.



---

[1] DEA, *Drug Slang Code Words* (May 2017), available at https://www.dea.gov/sites/default/files/2018-07/DIR-020-17%20Drug%20Slang%20Code%20Words.pdf.

WARRANTS_000001.08

# Redacted

14. Based on my training and experience, I know that drug traffickers will sometimes use USPS's Priority Mail service, which is the intended USPS two-day delivery product. Based on my training and experience with the USPIS, I know drug traffickers use Priority Mail delivery service because of its reliability and the ability to track the article's progress to the intended delivery point. In my training and experience, traffickers will often use fictitious names, phone numbers, or addresses as well as incomplete names and addresses in an attempt to hide their trafficking efforts from law enforcement.

15. I also know, based on my training and experience, that Puerto Rico is a trans-shipment point for controlled substances. As such, controlled substances are frequently transported from Puerto Rico via USPS, and the proceeds from the sale of the controlled substances are frequently returned to Puerto Rico via USPS or other means.

16. Between October 31, 2022 and May 5, 2025, case agents located more than 30 suspicious parcels consistent with drug parcels that were mailed from Puerto Rico to the greater Milwaukee area, using fictitious names and addresses. The Consolidated Lead Evaluation and Reporting ("CLEAR") database is a public records product that is designed for law enforcement officers in locating subjects and witnesses, verifying identities of individuals, and gathering background information for use in investigations. A search of the CLEAR database for each of these parcels indicated the recipient names shown on the shipping labels were fictitious. In total, this drug trafficking organization used more than 25 different sender names for all of the suspected cocaine laden parcels. Post Office surveillance video has captured four different subjects shipping

8

approximately 22 of these parcels. Surveillance video from the relevant Post Offices show that many of these parcels shipped from Puerto Rico depict [Redacted] and [Reda [Redacted] shipping most of the suspected cocaine laden parcels. However, neither [Redacted] nor [Redacted] ever used their own name as the sender while they were depicted on surveillance video shipping these suspicious parcels. Between June 21, 2023 to March 6, 2025, [Redacted] appears to have shipped approximately 11 of these parcels. Between August 1, 2023 to February 14, 2024, [Redacted] appears to have shipped approximately 4 of these parcels. Between January 21, 2025 to March 6, 2025, an unknown Hispanic male ("UM-1") who was found to be associated with [Redacted] [Redacted] appears to have shipped approximately 6 of these parcels.

17. Of these 30 parcels, case agents seized and searched five of the suspicious parcels pursuant to search warrants, and each parcel contained approximately one kilogram of cocaine. One of the parcels also contained fentanyl as described below.

# Redacted

# Redacted

9

WARRANTS_000001.10



20.     Jeronis MONTERO, a.k.a. "Nonie," is a cocaine trafficker who obtains controlled substances for further distribution from ▮▮▮Redacted▮▮▮ MONTERO resides at 214 East Clarke Street, Milwaukee, Wisconsin ("**SUBJECT PREMISE 1**"), which has been confirmed by investigation, surveillance, and review of utilities records.  During the course of this investigation, case agents determined that MONTERO has used cellular telephone number 414-712-4799. . A review of the USPS business records have showed that an IP address subscribed with Charter Communications to ▮Redacted▮ 2475 South 5th Street, Milwaukee, Wisconsin 53207 ("**SUBJECT PREMISE 2**") has been used to track suspected drug parcels. VARGAS is MONTERO's brother. Moreover, case agents have observed MONTERO entering and exiting the house using keys. MONTERO's mother ▮Redacted▮ has registered the address ▮Redacted▮ S 5th Street ("**SUBJECT PREMISE 2**") with the Wisconsin DOT.

10

WARRANTS_000001.11

21.     Javier CARTAGENA-COLON is a cocaine trafficker who obtains cocaine for further distribution from [Redacted] CARTAGENA-COLON resides at 719 West Madison Street, Milwaukee, Wisconsin ("**SUBJECT PREMISE 3**"), which has been confirmed by investigation, surveillance, and review of utilities records. During the course of this investigation, case agents determined that CARTAGENA-COLON has used cellular telephone numbers 414-309-5124 and 414-343-6988. CARTAGENA-COLON has been observed by case agents multiple times operating a black 2018 Chevrolet Impala bearing Wisconsin license plates AUC9843 **("SUBJECT PREMISE 7")** to pick up and transport drug parcels. The Wisconsin Department of Transportation ("DOT") records showed the Impala was registered to [Redacted] Puentes at [Redacted] W. Madison Street Upper, Milwaukee, Wisconsin ("**SUBJECT PREMISE 3**"). The Wisconsin Circuit Court database showed CARTAGENA-COLON has three separate court cases [Redacted], where his address on record is either 719 W. Madison Street or 719 W. Madison Street Upper. This same database showed paternity court case 2024PA000703PJ was between CARTAGENA-COLON and [Redacted] The address on record for [Redacted] was [Redacted] W. Madison Street Lower. A review of the Wisconsin Department of Corrections ("DOC") database showed CARTAGENA-COLON is currently on parole for 1st Degree Recklessly Endangering Safety and he has several family members shown as living at 719 W. Madison Street Upper. (I personally conducted surveillance at 719 W. Madison Street, and observed that there are two different doors, one marked "719" and one marked "717," and I also observed two different electric meters, consistent with two separate units. However, the one marked "719" is it own unit.) CARTAGENA-COLON also has a stash house located at 2158 S. 18th Street, Milwaukee, Wisconsin ("**SUBJECT PREMISE 4**"). On multiple occasions, case agents have observed CARTAGENA-COLON park the black 2018 Chevrolet Impala in the area

11

WARRANTS_000001.12

of 2158 S. 18th Street and go in and out of the front door of 2158 S. 18th Street after receiving suspected drug parcels, consistent with using this as a stash house.

22. Leonardo PEREZ, a.k.a. "Leo," is a cocaine trafficker who obtain controlled substances for further distribution from ████████Redacted████████ PEREZ resides at 2832 S. 33rd Street, Milwaukee, Wisconsin ("**SUBJECT PREMISE 5**"), which has been confirmed by investigation, surveillance, review of utilities records, and cellular phone ping data. During the course of this investigation, case agents determined that PEREZ has used cellular telephone number 414-275-7839. On March 6, 2025, case agents obtained a court order authorizing agents to obtain location data for PEREZ's telephone. This data has revealed PEREZ spends a vast majority of his time, to include most overnights, in the area of 2832 S. 33rd Street, Milwaukee, Wisconsin ("**SUBJECT PREMISE 5").** PEREZ also has a stash house located at 6519 West Wisconsin Avenue ("**SUBJECT PREMISE 6**"). PEREZ has been observed picking up and transporting suspected drug parcels in a gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 **("SUBJECT PREMISE 8")**. A check of PEREZ through Wisconsin Circuit Court Record system revealed PEREZ is currently on bail for a felony case pending in Milwaukee County for possession with the intent to deliver cocaine 5-15 grams. *See State of Wisconsin v. Leonardo S. Perez*, Milwaukee County Court Case 2023CF003450.

23. On September 13, 2023, ████████Redacted████████ was depicted on Post Office surveillance video in Bayamon, Puerto Rico shipping USPS Priority Mail parcel 9505510690123256610282 ("SUBJECT PARCEL 21"). SUBJECT PARCEL 21 was a USPS large flat rate parcel weighing approximately 7 lbs. 10 oz. The shipping label for SUBJECT PARCEL 21 indicated it was from "Jomael Santana Urb. Mira Flores Calle 15 Bloq 4-44 Bayamon PR 00957". SUBJECT PARCEL 21 bore a handwritten label addressed to "Nashaly Matras 1112

12

WARRANTS_000001.13

W. Grant St. Milwaukee WI 53215". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. The destination address of SUBJECT PARCEL 21 was tied to another suspicious parcel—USPS Priority Mail parcel 9505511455842158392145, which was also addressed to 1112 West Grant Street. On June 10, 2022, I applied for a federal search warrant for USPS Priority Mail parcel 9505511455842158392145, and found that the parcel contained a white powdery substance still in brick-like form, which had a gross weight of approximately 1,040 grams and field tested positive for the presence of cocaine. The shipping label for USPS Priority Mail parcel 9505511455842158392145, indicated the parcel was from "Eduardo Cozme, Urb. Reparto Santa Teresita M15 Calle 25, Bayamon P.R. 00956," a sender address used on four different parcels (SUBJECT PARCEL 19, 20, 22, and 26), which were shipped by either ██████ Redacted ██████ or ██████ Redacted ██████ This parcel also bore a fictitious recipient's name and was shipped from Toa Baja, Puerto Rico, which is in the same vicinity as Bayamon, Puerto Rico.

24.     On September 13, 2023, ██████ Redacted ██████ was depicted on Post Office surveillance video in Sabana Seca, Puerto Rico shipping USPS Priority Mail parcel 9505510336363256709370 ("SUBJECT PARCEL 20"). SUBJECT PARCEL 20 was a USPS large flat rate parcel weighing approximately 7 lbs. 11 oz. The shipping label for SUBJECT PARCEL 20 indicated it was from "Alex Figueroa Urb. Reparto Santa Teresita M15 Calle 25 Bayamon Pr 00956." SUBJECT PARCEL 20 bore a handwritten label addressed to "Yessica Rodriguez 2166 S. 7th St. Milwaukee WI 53215." A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. The distance between the two Post Offices used to ship SUBJECT PARCEL 20 and SUBJECT PARCEL 21 (as described in the paragraph above) is approximately a 19-minute drive. SUBJECT PARCEL 20 was postmarked

WARRANTS_000001.14

approximately 34 minutes before SUBJECT PARCEL 21. From my training and experience, I believe ███████Redacted███████ intentionally visited two different nearby Post Offices in an attempt to conceal ▨R participation, and the contents of the parcels. Based on this investigation, case agents believe both SUBJECT PARCEL 20 and SUBJECT PARCEL 21 were drug parcels, consistent with other drug parcels containing approximately 1 kilogram of cocaine.

25.     On September 15, 2023, case agents conducted surveillance on the delivery of SUBJECT PARCEL 20. At approximately 10:08 a.m., SUBJECT PARCEL 20 was delivered to an unknown Hispanic male ("UM-2") in front of the residence located at 2166 South 7th Street, Milwaukee, Wisconsin 53215. UM-2 was working on a light colored 2001 Chevrolet Tahoe bearing Wisconsin license plate AFB7616 parked in front. The Wisconsin DOT records indicated the Tahoe was registered to a subject at 2654 South 10th Street, Milwaukee, Wisconsin, the same address as the destination address for SUBJECT PARCEL 39, as described below. At approximately 10:16 a.m., a white Nissan sedan bearing Wisconsin license plates ATF-1684, which at the time was registered to ▓ Redacted ▓ at 1528 North Hawley Road, Milwaukee, Wisconsin according to Wisconsin DOT records, parked in front of 2166 South 7th Street. The driver of the white Nissan sedan never exited the vehicle. At the time of the delivery, UM-2 accepted SUBJECT PARCEL 20 and placed the parcel inside of the white Nissan. The Nissan then left the area with the parcel. A current check of the Nissan's registration showed the vehicle is still registered to ▓ Redacted ▓ but now at PEREZ's stash house located at 6519 West Wisconsin Avenue ("**SUBJECT PREMISE 6**"). Based on physical surveillance, the Nissan appears to be the same Nissan observed by case agents at PEREZ's residence 2832 South 33rd Street ("**SUBJECT PREMISE 5**"), being driven by PEREZ, as described below.

14

WARRANTS_000001.15

26.    On September 20, 2023, ████████ was depicted on Post Office surveillance video in Sabana Seca, Puerto Rico shipping USPS Priority Mail parcel 9505510336373263233430 ("SUBJECT PARCEL 22"). SUBJECT PARCEL 22 was a USPS large flat rate parcel weighing approximately 8 lbs. 11 oz. The shipping label for SUBJECT PARCEL 22 indicated it was from "Carla Jimenez Lopez Urb. Reparto Santa Teresita M 15 Calle 25 Bayamon PR 00956." SUBJECT PARCEL 22 bore a handwritten label addressed to "Angel Threatt Gonzalez 2441 N Dr William Finlayson St Milwaukee WI 53212." A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. On September 26, 2023, I applied for a federal search warrant for SUBJECT PARCEL 22. On September 27, 2023, the search warrant was issued by United States Magistrate Judge Stephen Dries in the Eastern District of Wisconsin. Upon executing the search warrant on SUBJECT PARCEL 22, case agents discovered a white powdery substance still in brick-like form, which had a gross weight of approximately 1,028 grams, and three additional smaller plastic bags containing unknown powders. The drug packaging, suspected cocaine, and the additional three unknown powders were later sent to the USPIS Forensic Laboratory for analysis. Certified laboratory testing revealed the presence of the following controlled substances: approximately 1,010.8 grams of cocaine hydrochloride and caffeine; approximately 0.4562 grams of heroin, fluorofentanyl, fentanyl, and procaine; approximately 0.9856 grams of fentanyl, cocaine, 4-anilino-N-phenethylpiperidine (4-ANPP), xylazine, and caffeine; and approximately 1.2323 grams of fentanyl, cocaine, 4-anilino-N-phenethylpiperidine (4-ANPP), xylazine, and caffeine. A latent print examination of SUBJECT PARCEL 22 and its contents found ████████ prints were located on multiple locations, including the items within the parcel, the adhesive side of clear tape, and pieces of green plastic wrap. A review of the USPS business records showed that an IP address subscribed with

WARRANTS_000001.16

AT&T to Julio VARGAS, 3908 North 19th Place, Unit 1, Milwaukee, Wisconsin 53206, (262) 900-5023 was used to track SUBJECT PARCEL 22. VARGAS is MONTERO's brother. At the time, VARGAS was on probation for a previous felony drug case through the State of Wisconsin. VARGAS ultimately died on October 19, 2023. Phone records for VARGAS's phone number provided by AT&T above showed his phone had multiple phone contacts with 939-324-5219, which was subscribed to **Redacted**

27.     A text conversation was later located on MONTERO's Apple Inc. account associated with phone number 414-712-4799 between MONTERO and "Big Brrr". Big Brrr was using phone number 787-528-7741. On August 5, 2023, MONTERO sent "Laquan Threatt 2441 N Fifth St Milwaukee, WI 53212". This is the same destination address used for SUBJECT PARCEL 22, described above, which contained approximately one kilogram of suspected cocaine. Big Brrr later replied with an image of the exterior of a taped closed USPS Priority Mail flat rate parcel with the information provided by MONTERO written on the shipping label. On August 14, 2023, MONTERO sent two videos from a Blink surveillance camera attached to the front of a residence showing the USPS Letter Carrier deliver a parcel to this address and then another video of MONTERO taking the parcel off of the porch and walking with it out of view. Case agents determined the video was taken from a camera attached to the front of the residence for the destination address of SUBJECT PARCEL 22, 2441 Dr. William Finlayson Street. On August 24, 2023, MONTERO sent "Hector Vargas 2475 s 5th st Milwaukee wi 53207" ("**SUBJECT PREMISE 2**") to Big Brrr. On August 26, 2023, Big Brr said, "Pa the girl is on his way" and advised the parcel would be delivered "Monday". Based on case agents' training and experience, they know that drug traffickers use the coded word "girl" in this context when referring to cocaine. A review of USPS business records showed a suspicious parcel, 9505510540973238405735,

16

WARRANTS_000001.17

shipped from San Juan, Puerto Rico was delivered to **SUBJECT PREMISE 2** on Monday, August 28, 2023. Based on this investigation, case agents believe the parcel depicted in surveillance video being taken into possession by MONTERO and 9505510540973238405735 are consistent with containing an undetermined amount of cocaine.

28. On February 14, 2024, [Redacted] was depicted on Post Office surveillance video in Bayamon, Puerto Rico shipping USPS Priority Mail parcel 9505510690124045768061 ("SUBJECT PARCEL 26"). SUBJECT PARCEL 26 was a USPS large flat rate parcel weighing approximately 6 lbs. 12 oz. The shipping label for SUBJECT PARCEL 26 indicated it was from "Karla Lopez Urb. Reparto Santa Terresita M15 C 125 Bayamon P.R 00956". SUBJECT PARCEL 26 bore a handwritten label addressed to "Angel Lopez Torrez 3869 E Barnard Ave Rear Cudahy WI 53110-1523". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. Minor variations of the sender's address shown for SUBJECT PARCEL 26 have been seen before on USPS parcels 9505511455842158392145 and SUBJECT PARCEL 22, which were seized and searched by case agents. As detailed above, two different kilogram of cocaine seizures were made from these parcels with almost the same sender's address as seen on the shipping label for SUBJECT PARCEL 26. Based on this investigation, case agents believe SUBJECT PARCEL 26 was a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine.

29. On January 6, 2025, CARTAGENA-COLON's Apple Inc. account associated with 414-309-5124 shows that CARTAGENA-COLON was messaging about a parcel with [Redacted] [Redacted] and MONTERO. This is the same date as USPS Priority Mail parcel 9505[Redacted] was delivered to [Redacted] W. Orchard Street, Milwaukee, Wisconsin

WARRANTS_000001.18

which is Redacted s suspected residence. At approximately 8:34 a.m., CARTAGENA-COLON sent Redacted "U knw wat time ur mail runs" and "Says it's cumin today". At approximately 9:50 a.m., MONTERO sent CARTAGENA-COLON, "I was going to say let me use impala I'll go sit out there. Truck just don't got no heat". CARTAGENA-COLON replied, Redacte on it already jus pull up we can ride out in a few". Case agents believe CARTAGENA-COLON was advising Redacted of a suspected cocaine laden parcel was going to be delivered to her residence on this date and MONTERO appears to want to use CARTAGENA-COLON's black 2018 Chevrolet Impala **("SUBJECT PREMISE 7")** to conduct counter surveillance for the delivery of the parcel. At approximately 10:23 a.m., Redacted sent CARTAGENA-COLON: "One things for sure your package is safe here. Mom orders big boxes all the time they r never touched. As well as Javi and dezi packages. I'll be checking every hr and looking out for both our packages soon as they come I'll have u slide over". At approximately 1:05 p.m., Redacted said, "Mail man hasn't came yet I'm sure it's the weather but I'll keep u updated". At approximately 1:31 p.m., CARTAGENA-COLON sent, "I seen the mail truck a few blocks up". At approximately 3:47 p.m., Redacted asked, "So it's in my mom name?" CARTAGENA-COLON replied, "It had her last name by different first name". Case agents believe Redacted was updating CARTAGENA-COLON on the parcel's delivery status and CARTAGENA-COLON was advising her the parcel had a fake name on the shipping label. The USPS records showed the parcel was delivered at approximately 4:23 p.m. At approximately 7:35 p.m., Redacted asked CARTAGENA-COLON, "Did u make sure to rip off the mailing address before doing anything". CARTAGENA-COLON said, "Yes I did". From case agent's training, experience, sometime drug traffickers rip off and discard shipping labels from their drug laden parcels after the parcel is delivered in an attempt to deter law enforcement from discovering detailed information about the

18

WARRANTS_000001.19

parcel. Case agents believe [Redacted] knew the parcel contained drugs and wanted to make sure CARTAGENA-COLON discarded the label so the parcel could not be traced back to her residence.

30. On February 14, 2025, [Redacted] was depicted on Post Office surveillance video in Bayamon, Puerto Rico shipping USPS Priority Mail parcel 9505512222105045044871 ("SUBJECT PARCEL 34"). SUBJECT PARCEL 34 was a USPS large flat rate parcel weighing approximately 8 lbs. 13 oz. The shipping label for SUBJECT PARCEL 34 indicated it was from "Alex Figueroa Ext La Inmaculada DD9 Calle 4 Toa Baja PR 00949". SUBJECT PARCEL 34 bore a handwritten label addressed to "Zach Croin 3755 S. Pennsylvania Ave St Francis WI 53235". This recipient's name and address was later located in [Redacted]s Apple Inc. account, as detailed below. A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious.

31. On February 28, 2025, U.S. Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin issued a warrant for information associated with the Apple Inc. accounts associated with phone number [Redacted] associated with [Redacted] 414-712-4799 associated with Jeronis MONTERO; and, [Redacted] associated with [Redacted] [Redacted] Various images of USPS related information were saved to the accounts. One image was found in [Redacted]'s account of a piece of an envelope showing the name and address of "SANTIAGO RAMOS, EMANUEL J EXT LA INMACULADA DD8 CALLE SANTA FE TOA BAJA, PR 00949-3992". Variations of this address have been used on several suspicious parcels, SUBJECT PARCELs 31, 34, 37, 38, and 41, shipped by this DTO to various Milwaukee addresses. One of these previous parcels, SUBJECT PARCEL 34, was shipped by [Redacted]. Also in [Redacted]'s account was a picture of a cell phone "note" with the following addresses shown: Anthony Beyreis 2457A W. McKinley

19

WARRANTS_000001.20

Avenue, Milwaukee, WI 53205; Gabriel Hernandez 5125 N. 32nd Street, Milwaukee, WI 53209; Zach Cronin 3755 S. Pennsylvania Avenue, Saint Francis, WI 53235—the recipient name and address on SUBJECT PARCEL 34. These same names and addresses were used as the recipient names and addresses for SUBJECT PARCELS 31, 32, and 34, respectively.

32. On February 18, 2025, CARTAGENA-COLON's Apple Inc. account associated with 414-309-5124 shows that CARTAGENA-COLON had a brief discussion with an unidentified phone number. At approximately 12:09 p.m., CARTAGENA-COLON advised "Shit waiting on a package wats the word". The date of this text is the same date USPS Priority Mail parcel 9505512222105045044871 ("SUBJECT PARCEL 34") was delivered. SUBJECT PARCEL 34 was delivered at 12:42 p.m.

33. On January 21, 2025, UM-1, who was the front seat passenger in a dark colored Toyota Highlander with Puerto Rico license plates of HKU623, was depicted on Post Office surveillance video in Sabana Seca, Puerto Rico shipping USPS Priority Mail parcel 9505510336375021530034 ("SUBJECT PARCEL 27"). Several images were located in Redacted 's Apple Inc. account associated with Redacted with Redacted standing next to a silver Honda Accord. There were also multiple images of Redacted and UM-1 together at various locations. The Accord in the photographs appear to be the same vehicle as depicted in multiple Post Office surveillance videos where Redacted or UM-1 were shipping the suspected cocaine laden parcels related to this investigation. UM-1 was depicted on Post Office surveillance video shipping SUBJECT PARCEL 27, SUBJECT PARCEL 33, SUBJECT PARCEL 35, and SUBJECT PARCEL 36.

20

WARRANTS_000001.21

34. Several images were located in **Redacted** s Apple Inc. account associated with **Redacted** with **Redacted** standing next to a silver Honda Accord. There were also multiple images of **Redacted** and UM-1 together at various locations. The Accord in the photographs appear to be the same vehicle as depicted in multiple Post Office surveillance videos where **Redacted** or UM-1 were shipping the suspected cocaine laden parcels related to this investigation.

35. SUBJECT PARCEL 27 was a USPS large flat rate parcel weighing approximately 8 lbs. 10 oz. The shipping label for SUBJECT PARCEL 27 indicated it was from "Javier Pagan Ext La Imaculada DD 7 Calle 4 Toa Baja P.R. 00949". SUBJECT PARCEL 27 bore a handwritten label addressed to "Enrique Vazquez 4906 N. 37th St. Milwaukee W.I. 53209". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. A review of the Puerto Rico Department of Transportation records indicated the license plate was for the Highlander was registered to Yaritza Batista-Ortega, Urb. Valencia A-5 Calle Amapola, Bayamon, Puerto Rico 00957. Phone toll analysis for **Redacted** s phone **Redacted** **Redacted** showed on January 21, 2025, at approximately 3:02 p.m., local Puerto Rico time, **Redacted** received a phone call from **Redacted** This call was placed to him approximately five minutes after UM-1 subject began his transaction with USPS to ship SUBJECT PARCEL 27. Based on case agents' training and experience, subjects who ship drug laden parcels on behalf of someone else will sometimes call their fellow co-conspirator to notify them the shipment was successfully made. Case agents believe this phone call was made to notify **Redacted** of the suspect shipment of SUBJECT PARCEL 27. On February 19, 2025, case agents issued a subpoena, served on T-Mobile, for telephone number **Redacted** The subscriber information for the telephone number listed to **Redacted**

21

WARRANTS_000001.22

**Redacted** —the same

address and last name of the subject the Highlander used to transport the suspected drug parcel to the U.S. Post Office in Sabana Seco, Puerto Rico was registered to.

36.     A screenshot of what appears to be a video call saved in **Redacted** **Redacted** s Apple Inc. account associated with **Redacted** was saved showing a picture of a piece of paper with "Enrique Vazquez 4906 N 37th St Milwaukee WI 53209" written on it. This is the same recipient's name and destination address for SUBJECT PARCEL 27. **Redacted** **Redacted** s face was shown within the image as a participant of the video call. There was also an image of the exterior of a taped closed SUBJECT PARCEL 27. The metadata for this image showed it was created January 21, 2025 which is the day the parcel was shipped. The metadata showed the location of where the image was taken was at GPS coordinates "18.400769, -66.227295". Using an opensource database, this location was determined to be at a residential address off of Calle Santa Fe in the city of Toa Baja, Puerto Rico. When comparing the street view of this residence specifically to the images of **Redacted** standing in front of the silver Honda Accord, the Accord appears to be parked directly in front of this location.

37.     On or about April 23, 2025, U.S. Magistrate Judge Stephen Dries in the Eastern District of Wisconsin issued a search warrant for the Apple Inc. accounts associated with cellular telephone phone number 414-309-5124, which is associated with CARTAGENA-COLON. The Apple Inc. account associated 414-309-5124 appeared to be used by CARTAGENA-COLON based on "selfie" images/videos, text messages, and the phone contacts. CARTAGENA-COLON is also the likely user of the cellphone assigned number 414-309-5124.

38.     Chat conversation #8 from CARTAGENA-COLON's Apple Inc. account associated with 414-309-5124 was between CARTAGENA-COLON and "Leo". Leo was using

22

phone number 414-275-7839 which is the phone number suspected to be utilized by PEREZ. On January 24, 2025, PEREZ sent "Phone has died when you chop it up with bro call me so I can pull up". This message was sent on the same date U.S. Postal Service Priority Mail parcel 9505510336375021530034 ("SUBJECT PARCEL 27") was delivered. From their training and experience, case agents suspect PEREZ was asking CARTAGENA-COLON to advise him when the suspected cocaine contained inside of SUBJECT PARCEL 27 was broken down into smaller distribution quantities so he could get some to distribute.

      39.    Chat conversation #39 from CARTAGENA-COLON's Apple Inc. account associated with 414-309-5124 was between CARTAGENA-COLON and "Nonie". Nonie was using phone number 414-712-4799—the phone number used by MONTERO. On January 24, 2025, MONTERO sent the following message: "We chop it up tn" and "Tm". This message was sent on the same date SUBJECT PARCEL 27 was delivered. As previously mentioned, from their training and experience, case agents suspect MONTERO was advising CARTAGENA-COLON they would "chop" or break down the suspected cocaine contained inside of SUBJECT PARCEL 27 into distribution quantities that day (tonight) or the next (tomorrow). On March 13, 2025, MONTERO sent "Today gbaby" and "Just checked". This message was sent on the same date USPS Priority Mail parcel 9505510690115065678133 ("SUBJECT PARCEL 41") was delivered. CARTAGENA-COLON replied, "She's there". Case agents believe CARTAGENA-COLON is advising MONTERO, one of his associates is at the delivery address ready to take possession of SUBJECT PARCEL 41 on their behalf. See chat conversation #53 below for additional information.

      40.    Task Force Officer Robert Gregory conducted a search of the Wisconsin Department of Corrections jail call system for MONTERO's phone number 414-712-4799, and

Task Force Officer Gregory located a call between MONTERO and an inmate listed as [Redacted] [Redacted] on January 24, 2025 at approximately 9:27 p.m., during which MONTERO passed along the phone number [Redacted], which is associated with [Redacted] and suggested that [Redacted] had called him a little while ago and told MONTERO to pass along [Redacted]s number to [Redacted] On February 20, 2025, U.S. Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin authorized a WhatsApp LLC pen register trap and trace order for both [Redacted] and 414-712-4799.

41.    On January 22, 2025, [Redacted] was depicted on Post Office surveillance video in Sabana Seca, Puerto Rico, while operating an unlicensed silver Honda Accord with tinted windows, shipping USPS Priority Mail parcel 9505510336375022531115 ("SUBJECT PARCEL 28"). SUBJECT PARCEL 28 was a USPS large flat rate parcel weighing approximately 8 lbs. 10 oz. The shipping label for SUBJECT PARCEL 28 indicated it was from "Bryan Rojas Oliveras Ext. La Imaculada DD 9 Calle 4 Toa Baja P.R. 00949". SUBJECT PARCEL 28 bore a handwritten label addressed to "Anthony Perez 1545 W. Washington Milwaukee W.I. 53204". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. A search of the Wisconsin Department of Transportation records showed 1545 W. Washington Street was the address on record for PEREZ's driver's license. Based on this investigation, case agents believe SUBJECT PARCEL 28 was a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine. An image was saved showing the exterior of SUBJECT PARCEL 28 to [Redacted]s Apple Inc. account associated with [Redacted] The metadata for this image showed it was created January 22, 2025 which is the day the parcel was shipped. The metadata showed the location of where the image was taken was at GPS coordinates "18.400780, -66.227273". Using an opensource

WARRANTS_000001.25

database, this location was again determined to be the same location as where the photograph of SUBJECT PARCEL 27 was taken.

42.     On March 6, 2025, I applied for and received a search warrant for the Apple Inc. accounts associated with cellular telephone phone number 414-275-7839, a call number associated with PEREZ. In that iCloud account, a text conversation between PEREZ and an unsaved contact using phone number 414-870-5568 was found to be suspicious. On January 24, 2025, at approximately 2:07 p.m., 414-870-5568 sent "Mail comes around 2, 3oclk". This is the same date USPS Priority Mail parcel 9505510336375022531115 ("SUBJECT PARCEL 28"), as detailed above, was delivered to 1545 W. Washington Street. Later in the conversation on a different date, PEREZ was asked to send his address. PEREZ sent "2832 S 33rd St, Milwaukee 53215" ("**SUBJECT PREMISE 5**"). This is the address previously identified by case agents as being associated with PEREZ.

43.     On January 27, 2025, ██Redacted██ was depicted on Post Office surveillance video in Bayamon, Puerto Rico, while operating what appeared to be a silver Honda Accord with tinted windows, shipping USPS Priority Mail parcel 9505510690125027094604 ("SUBJECT PARCEL 29"). SUBJECT PARCEL 29 was a USPS large flat rate parcel weighing approximately 8 lbs. 7 oz. The shipping label for SUBJECT PARCEL 29 indicated it was from "Josue Rivera Calle Perla del Sur I28 Reparto Flamingo Bayamon PR 00959". SUBJECT PARCEL 29 bore a handwritten label addressed to "Carlos Garcia 1032 W Rogers St. Milwaukee WI 53204". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. On January 30, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 29. After the parcel was delivered, an associate of CARTAGENA-COLON's, later identified as ██Redacted██ placed the parcel into a black 2018 Chevrolet Impala

25

WARRANTS_000001.26

bearing Wisconsin license plates AUC9843 **("SUBJECT PREMISE 7")** and the vehicle then immediately left the area. Based on other observations, case agents believe that CARTAGENA-COLON was driving the black 2018 Chevrolet Impala. Due to the tinted windows on the black 2018 Chevrolet Impala, case agents could only decipher a male subject was the driver. Based on this investigation, case agents believe SUBJECT PARCEL 29 was a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine. CARTAGENA-COLON also has Redacted listed as a friend living at Redacted Wisconsin 53204 with the Wisconsin Department of Corrections. On January 30, 2025, CARTAGENA-COLON's Apple Inc. account associated with 414-309-5124 shows that CARTAGENA-COLON was messaging "Menor" about a parcel. Menor was using phone number 414-659-4717. A review of Cash App records showed 414-659-4717 had a Cash App profile associated with Redacted and a "$cashtag" name of " Redacted The date of this text conversation is the same date SUBJECT PARCEL 29 was delivered. At approximately 9:03 a.m., CARTAGENA-COLON sent, "Be looking for that package ima be on the way it said shud be there soon". Redacted replied, "Ok I'm already looking is it coming in regular mail right". CARTAGENA-COLON said, "Yea". Case agents believe CARTAGENA-COLON was advising Redacted of a suspected cocaine laden parcel that was going to be delivered to Redacted 's residence on this date.

44. On February 3, 2025, Redacted was depicted on Post Office surveillance video in Sabana Seca, Puerto Rico shipping USPS Priority Mail parcel 9505510336375034537808 ("SUBJECT PARCEL 30"). SUBJECT PARCEL 30 was a USPS large flat rate parcel weighing approximately 7 lbs. 1 oz. The shipping label for SUBJECT PARCEL 30 indicated it was from "Javier Pagan Calle Perla del Sur I 28 Reparto Flamingo

Bayamon P.R. 00959". SUBJECT PARCEL 30 bore a handwritten label addressed to "Oscar Vargas 2475 S. 5th St. Milwaukee W.I. 53207" ("**SUBJECT PREMISE 2**"). A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. On February 5, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 30. Upon arrival to the area, CARTAGENA-COLON's vehicle, a black 2018 Chevrolet Impala bearing Wisconsin license plates AUC9843 (**"SUBJECT PREMISE 7"**), was parked in the area. CARTAGENA-COLON had previously been observed driving this black 2018 Chevrolet Impala multiple times. Approximately 15 minutes after SUBJECT PARCEL 30 was delivered to either the side door or the rear of the residence, MONTERO and CARTAGENA-COLON emerged from the same area as where SUBJECT PARCEL 30 was delivered. Both subjects entered CARTAGENA-COLON's black 2018 Chevrolet Impala, with CARTAGENA-COLON as the driver and MONTERO as the front seat passenger. They briefly left the area and later returned. Both subjects walked through the front door of 2475 South 5th Street—the recipient address. A short time later, CARTAGENA-COLON, a small child, and MONTERO again left the residence and drove away in the black 2018 Chevrolet Impala. Based on this investigation, case agents believe SUBJECT PARCEL 30 was a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine. A review of the USPS business records showed that an IP address subscribed with Charter Communications to ▮Redacted▮ 2475 South 5th Street, Milwaukee, Wisconsin 53207 ("**SUBJECT PREMISE 2**") was used to track SUBJECT PARCEL 30. VARGAS is MONTERO's brother. A further review of USPS business records showed various unique and specific routing IPs with the same prefixes and subnet identifications were used to monitor additional suspected USPS drug parcels: 9505510690115041664938 ("SUBJECT PARCEL 32"); 9505512222085043969720 ("SUBJECT PARCEL 33"); and

WARRANTS_000001.28

9505510690125055119799 ("SUBJECT PARCEL 36"). A screenshot of what appears to be a video call was saved showing a picture of a piece of paper with "2475 S 5th St Milwaukee WI 53207 Oscar Vargas" ("**SUBJECT PREMISE 2**") written on it to ███Redacted███s Apple Inc. account associated with ███Redacted███s is the same recipient's name and destination address for SUBJECT PARCEL 30, as detailed above. ███Redacted███ face was shown within the image as a participant of the video call.

45.     On February 8, 2025, CARTAGENA-COLON's Apple Inc. account associated with 414-309-5124 shows that CARTAGENA-COLON was messaging with MONTERO about a large amount of money. Early in the conversation, CARTAGENA-COLON advised MONTERO he was on his way to MONTERO's residence. MONTERO later replied, "16590?" CARTAGENA-COLON said, "Shuda been 17", "That's all I had it's off", and "Shuda been all stacks". From case agents training and experience, they know "stacks" means $1,000. MONTERO said, "All of them was g except one it was 590 it was folded up weird tho. Just check make sure you ain't drop nun but it was definitely short" and "Counted it asap". Case agents believe CARTAGENA-COLON provided MONTERO with what he thought was $17,000 in drug proceeds, but after MONTERO counted the money it was only $16,590. The date of this conversation was approximately three days after USPS Priority Mail parcel 9505510336375034537808 ("SUBJECT PARCEL 30") was delivered to 2475 S. 5th Street ("**SUBJECT PREMISE 2**") which was occupied by both MONTERO and CARTAGENA-COLON. Case agents believe the money provided to MONTERO was drug proceeds due to it being days after the suspected cocaine laden parcel was delivered.

46.     On February 10, 2025, USPS Priority Mail parcel 9505510690115041664938 ("SUBJECT PARCEL 32") was shipped from Bayamon, Puerto Rico. SUBJECT PARCEL 32

WARRANTS_000001.29

was a USPS large flat rate parcel weighing approximately 8 lbs. 2 oz. The shipping label for SUBJECT PARCEL 32 indicated it was from "David Rivera Calle Perla del Sur i28 Reparto Flamingo Bayamon PR 00959". SUBJECT PARCEL 32 bore a handwritten label addressed to "Gabriel Hernandez 5125 n 32nd st Milwaukee WI 53209". This recipient's name and address was later located in ▆▆▆▆Redacted▆▆▆▆s Apple Inc. account, as detailed above. A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. On February 13, 2025, SUBJECT PARCEL 32 arrived at the local Milwaukee Post Office and was scanned as out for delivery. On this same date, at approximately 2:07 p.m., case agents conducted surveillance at the destination address, 5125 N. 32nd Street, and observed PEREZ and MONTERO exit the front door of the residence. Both subjects got into a gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 **("SUBJECT PREMISE 8")**. The Wisconsin DOT database indicated that the gray 2019 Honda Accord was registered to Nicolasa Weary at 6519 W. Wisconsin Avenue, Milwaukee, Wisconsin 53213 ("**SUBJECT PREMISE 6**"). Case agents observed that PEREZ was the driver and MONTERO was the front seat passenger. Both subjects left the area in the gray 2019 Honda Accord and returned minutes later. Upon returning to the residence, both subjects entered the residence through the front door. On February 18, 2025, U.S. Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin issued a warrant to search SUBJECT PARCEL 32. Upon executing the search warrant on SUBJECT PARCEL 32, case agents discovered a white powdery substance still in brick-like form, which had a net weight of 1,001.2 grams and later tested positive for cocaine hydrochloride.

47. Chat conversation #17 from CARTAGENA-COLON's Apple Inc. account associated with 414-309-5124 was between CARTAGENA-COLON and "Tc". Tc was using phone number ▆▆Redacted▆▆ A review of Cash App records showed ▆▆Redacted▆▆ad a Cash

WARRANTS_000001.30

App profile associated with " ██Redacted██ " and a "$cashtag" name of " ██Redacted██ ".
██Redacted██ has the same last name as the registered owner of the ██Redacted██ that
was parked in front of ██Redacted██ on the day USPS Priority Mail
parcel 9505510690115041664938 ("SUBJECT PARCEL 32") was supposed to be delivered to
this address. This parcel was later seized by case agents and found to contain approximately a
"kilo" of cocaine. In the text conversation, on November 5, 2024, ██Redacted██ sent ██Redacted██
st". He sent it again on November 25, 2024 when CARTAGENA-COLON asked for it.

48.     Between February 9, 2025, and February 15, 2025, CARTAGENA-COLON's
Apple Inc. account associated with 414-309-5124 shows that CARTAGENA-COLON was
messaging MONTERO, ██Redacted██ and ██Redacted██ about a parcel. On February 9, 2025,
CARTAGENA-COLON sent "Wats papo last name", "Ima send that mf out tomorrow and gotta
use the last name on mail box don't wana use urs ima use a fake first name tho", and "Jus don't
wana use urs shit", ██Redacted██ replied, "No name on the mail box it's hernandez". Hernandez
was the same last name used for the recipient's last name on the shipping label of SUBJECT
PARCEL 32. Case agents believe CARTAGENA-COLON wanted to double check with
██Redacted██ and use the correct last name on the shipping label so the parcel would be delivered
without any issue, but he was still advising him that the first name will be a fake name. On February
13, 2025, at approximately 7:19 a.m., CARTAGENA-COLON sent, "That package cumin today".
MONTERO replied and "loved" the message sent by CARTAGENA-COLON. The date of this
text is the same date SUBJECT PARCEL 32 was scanned by USPS as being out for delivery. At
4:24 p.m., CARTAGENA-COLON sent, "That mf still say out for delivery". MONTERO said,
"Yes smh". On February 14, 2025, at approximately 6:27 p.m., CARTAGENA-COLON said,
"Jus told u I didn't get my shit like no bs that was everything I had 30 bands gone like that". From

case agents training and experience, they know "bands" means $1,000. Case agents believe CARTAGENA-COLON was disappointed SUBJECT PARCEL 32 was not delivered, and he was expecting to make $30,000 from selling the cocaine contained in the parcel. At approximately 6:29 p.m., Redacted replied, "No babe it's going to come packages come til 8pm so you still have some time why didn't u send it by me ha wtf dnt you have the address you ain't ask lil ha either. Have faith it will be there soon your last package came later than it said it did remember just keep tracking it" and "Next time 4122 w orchard st 53215 screen shot this for next time". Over the next few days, CARTAGENA-COLON and MONTERO continued to discuss the parcel not being delivered. On February 19, 2025, CARTAGENA-COLON asked, "Did u c ur mailman today G"? Redacted replied his mailman came, but nothing was delivered.

49.     On February 10, 2025, USPS Priority Mail parcel 9505510336375041542512 ("SUBJECT PARCEL 31") was shipped from Sabana Seca, Puerto Rico. SUBJECT PARCEL 31 was a USPS large flat rate parcel weighing approximately 8 lbs. 5 oz. The shipping label for SUBJECT PARCEL 31 indicated it was from "Jose Delgado Ext LA Inmaculada DD9 Calle Santa Fe Toa Baja, PR 00949-3992". SUBJECT PARCEL 31 bore a handwritten label addressed to "Anthony Beyreis 2457A W McKinley ave Milwaukee, WI 53205". This recipient's name and address was later located in Redacted s Apple Inc. account, as detailed above. A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. This parcel was later linked to MONTERO through WhatsApp, as detailed below. Based on this investigation, case agents believe SUBJECT PARCEL 31 has the characteristics of other drug parcels that contained approximately 1 kilogram of cocaine.

50.     On March 6, 2025, I applied for and received a search warrant for the Apple Inc. accounts associated with cellular telephone phone number 414-275-7839, a call number associated

WARRANTS_000001.32

with PEREZ. This iCloud account had MONTERO's phone number 414-712-4799 saved as "Non". Case agents know MONTERO's nickname as "Nonie". A text conversation was located between MONTERO and PEREZ. On February 12, 2025, at approximately 8:34 a.m., MONTERO sent, "Idk which one but one out for delivery". This is the same date USPS Priority Mail parcel 9505510336375041542512 ("SUBJECT PARCEL 31") and 9505510690115041664938 ("SUBJECT PARCEL 32") were scanned as out for delivery. SUBJECT PARCEL 32 was ultimately seized by case agents and found to contain approximately one kilogram of suspected cocaine.

51.     On February 12, 2025, UM-1 was depicted on Post Office surveillance video in Bayamon, Puerto Rico shipping USPS Priority Mail parcel 9505512222085043969720 ("SUBJECT PARCEL 33") from Bayamon, Puerto Rico. SUBJECT PARCEL 33 was a USPS large flat rate parcel weighing approximately 8 lbs. 2 oz. The shipping label for SUBJECT PARCEL 33 indicated it was from "Hector Figueroa Calle 25 Urb Royal Town V12 Bayamon RR 00956". SUBJECT PARCEL 33 bore a handwritten label addressed to "Reylando Garcia 6029 W. Lapham St Milwaukee WI 53214". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. This parcel was later linked to ████ Redacted ████ Redacted ████ and MONTERO through WhatsApp, as detailed below.

52.     On February 19, 2025, UM-1 was depicted on Post Office surveillance video in Bayamon, Puerto Rico shipping USPS Priority Mail parcel 9505512222085050972768 ("SUBJECT PARCEL 35"). SUBJECT PARCEL 35 was a USPS large flat rate parcel weighing approximately 8 lbs. 6 oz. The shipping label for SUBJECT PARCEL 35 indicated it was from "Bryan Rojas Calle Perla del Sur I 28 Reparto Flamingo Bayamon P.R. 00959". SUBJECT PARCEL 35 bore a handwritten label addressed to "Laquan Perkins 2760 N 11th St Milwaukee

32

WARRANTS_000001.33

WI 53206". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. The CLEAR database and the Wisconsin DOT records indicated Redacted Redacted is associated with the destination address, Redacted CLEAR showed a possible phone number for Redacted as Redacted Case agents located a Facebook profile for "Cj Perkins" who was shown to be associated with the Milwaukee area. "Cj Perkins" was shown to be a Facebook friend with Jeronis MONTERO's Facebook profile. Phone toll analysis for the time period of January 1, 2025 to June 1, 2025 indicated MONTERO's telephone number, 414-712-4799, was in frequent contact with Redacted suspected telephone number Redacted Redacted Based on this investigation, case agents believe SUBJECT PARCEL 35 was a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine.

53. On February 24, 2025, UM-1 was depicted on Post Office surveillance video in Bayamon, Puerto Rico, while operating an unlicensed silver Honda Accord with tinted windows, shipping USPS Priority Mail parcel 9505510690125055119799 ("SUBJECT PARCEL 36"). SUBJECT PARCEL 36 was a USPS large flat rate parcel weighing approximately 7 lbs. 13 oz. The shipping label for SUBJECT PARCEL 36 indicated it was from "Francisco Rivera Calle 25 V7 Urb Royal town Bayamon P.R 00956". SUBJECT PARCEL 36 bore a handwritten label addressed to "Travis Sligler 4559 S Vermont ave St Francis Wi 53235". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. On February 26, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 36 which occurred at approximately 10:55 a.m. At approximately 11:08 a.m., PEREZ's vehicle, a gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 **("SUBJECT PREMISE 8")**, parked in front of 4559 S. Vermont Avenue. After parking in front of the residence, case agents observed a female exit the front door of the house with something large and rectangular appearing to weigh

33

WARRANTS_000001.34

down the front pocket of her hooded sweatshirt. The female walked up to PEREZ's gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 slightly out of view of case agents, and moments later walked away from the vehicle. PEREZ's gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 then left the area. Case agents believe the female may have transferred SUBJECT PARCEL 36 to the occupant of PEREZ's gray 2019 Honda Accord bearing Wisconsin license plates AVH4781.

54. Case agents continued surveillance by following behind the gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 directly to a gas station, located at 641 N. Hawley Road, Wauwatosa, Wisconsin. The sole occupant of the vehicle, later identified as PEREZ, was seen exiting the driver's seat and walk into the gas station. Minutes later, PEREZ left the store and got back into the gray 2019 Honda Accord bearing Wisconsin license plates AVH4781. Case agents continued surveillance and observed the vehicle drive directly to 6517/6519 W. Wisconsin Avenue ("**SUBJECT PREMISE 6**"). At approximately 11:26 a.m. the Accord pulled into the driveway and parked in the rear of the residence. Task Force Officer Gregory observed PEREZ walk from the rear driveway area to the side door of the house. PEREZ was seen carrying a white cardboard box, consistent with SUBJECT PARCEL 36. Task Force Officer Gregory saw PEREZ use keys to open the side door of the residence and walk inside of the residence, out of view of case agents. On February 28, 2025, case agents conducted a "garbage pull" investigation at the address of 6517 & 6519 W. Wisconsin Avenue, Wauwatosa, Wisconsin ("**SUBJECT PREMISE 6**"). Case agents were aware this date was the normal date the City of Wauwatosa's Department of Public Works (DPW) would retrieve the garbage from the trash receptacles. Case agents responded to the address and observed two City of Wauwatosa trash cans at the curbline of the street. Case agents contacted a Wauwatosa Police Department Detective, who

34

WARRANTS_000001.35

advised he could retrieve the garbage with the assistance of the Department of Public Works ("DPW"). At approximately 9:35 a.m., the Wauwatosa Detective observed the DPW garbage truck (empty) arrive in front of 6517 / 6519 W. Wisconsin Avenue and retrieve multiple garbage bags from the two trash cans. The DPW garbage truck then drove to a predetermined meet location, followed by the Wauwatosa Detective, who took custody of the garbage bags and transported them to the Wauwatosa Police Department located at 1700 N. 116th Street, Wauwatosa, WI, where the bags were secured. At approximately 11:51 a.m., case agents responded to the Wauwatosa Police Department and met with the Wauwatosa Detective, who turned over ten knotted garbage bags over to be searched. During the search of garbage bag #1, case agents located an empty carboard box later determined to be SUBJECT PARCEL 36, which was identified by the handwritten shipping label and the USPS typewritten shipping label with the tracking number. Also, inside of garbage bag #1 were two different pieces of mail addressed to 6519 W. Wisconsin Avenue ("**SUBJECT PREMISE 6**"). Based on this investigation, case agents believe SUBJECT PARCEL 36 was a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine.

55. On February 25, 2025, Redacted was depicted on Post Office surveillance video in Sabana Seca, Puerto Rico, while operating a silver Honda Accord with tinted windows bearing Puerto Rico license plate Redacted registered to Redacted shipping USPS Priority Mail parcel 9505510336375056549902 ("SUBJECT PARCEL 37"). SUBJECT PARCEL 37 was a USPS large flat rate parcel weighing approximately 8 lbs. 7 oz. The shipping label for SUBJECT PARCEL 37 indicated it was from "Bryan Rojas Ext La Inmaculada DD7 Calle 4 Toa Baja PR 00949". SUBJECT PARCEL 37 bore a handwritten label addressed to "Enrique Sanchez 4122 W. Orchard St Milwaukee WI 53215". A search of the CLEAR database

WARRANTS_000001.36

indicated the recipient's name shown on the shipping label was fictitious. On February 27, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 37. Prior to its delivery, case agents observed CARTAGENA-COLON's vehicle, the black 2018 Chevrolet Impala (**"SUBJECT PREMISE 7"**), circling the area as if he was conducting counter surveillance. At approximately 11:54 a.m., the black 2018 Chevrolet Impala parked directly in front of 4122 West Orchard Street on the southside of the street. The black 2018 Chevrolet Impala was facing eastbound and allowed the occupants of the Impala to be able to see when the USPS Letter Carrier would be approaching the residence. At approximately 12:52 p.m., case agents observed the USPS Letter Carrier delivery mail in the area. At approximately 12:59 p.m., CARTAGENA-COLON exited the driver's door of the black 2018 Chevrolet Impala and walk directly onto the front porch of 4122 W. Orchard Street and out of view of case agents. At approximately 1:00 p.m., the Letter Carrier delivered SUBJECT PARCEL 37. At approximately 1:04 p.m., case agents observed CARTAGENA-COLON and a small child walk off of the front porch of the residence while CARTAGENA-COLON was carrying what appeared to be SUBJECT PARCEL 37 and a white bag. Case agents observed CARTAGENA-COLON put both SUBJECT PARCEL 37 and the white bag into the trunk of the Impala while the small child was placed into the rear seat of the black 2018 Chevrolet Impala. Shortly after, case agents observed an unknown female exit the residence and also get into the rear driver side seat of the black 2018 Chevrolet Impala. The black 2018 Chevrolet Impala then left the area. Case agents continued surveillance by following the vehicle. The black 2018 Chevrolet Impala drove directly to 2158 S. 18th Street ("**SUBJECT PREMISE 4**")—CARTAGENA-COLON's stash house. Case agents have also conducted surveillance on CARTAGENA-COLON and his black 2018 Chevrolet Impala. On multiple occasions, case agents have observed CARTAGENA-COLON park the black 2018 Chevrolet

36

WARRANTS_000001.37

Impala in the area of 2158 S. 18th Street and go in and out of the front door of 2158 S. 18th Street,

consistent with using this as a stash house. At approximately 1:14 p.m. on February 27, 2025, case

agents observed CARTAGENA-COLON, the unknown female, and the small child exit the black

2018 Chevrolet Impala and enter the residence at 2158 S. 18th Street ("**SUBJECT PREMISE 4**")

through the front door. Soon after entering the residence, CARTAGENA-COLON exited the

residence, sat in the driver's seat of the black 2018 Chevrolet Impala, and drove away. Case agents

continued to follow the vehicle. The vehicle drove directly to 2475 S. 5th Street ("**SUBJECT**

**PREMISE 2**"). At approximately 1:24 p.m., case agents observed the black 2018 Chevrolet

Impala park directly in front of the residence and saw CARTAGENA-COLON exit the vehicle

and retrieved what appeared to be SUBJECT PARCEL 37 out of the trunk. Case agents then

observed MONTERO exit the front passenger seat of vehicle. Both CARTAGENA-COLON, who

was carrying SUBJECT PARCEL 37, and MONTERO then walked through the front door of 2475

S. 5th Street ("**SUBJECT PREMISE 2"**).

      56.     On February 27, 2025, CARTAGENA-COLON's Apple Inc. account associated

with 414-309-5124 shows that CARTAGENA-COLON was messaging MONTERO and

Redacted about a parcel. The date of these texts is the same date SUBJECT PARCEL 37 was

delivered to Redacted s suspected residence. Redacted W. Orchard Street. At approximately 9:40

a.m., MONTERO sent, "Hml wsap" and "Asap". Case agents know "Hml" means "hit my line".

It appears MONTERO wanted CARTAGENA-COLON to call him right away. At approximately

9:50 a.m., CARTAGENA-COLON sent, "I gotta get chunky frm skool she sick and I gotta go get

a package Nonie jus hit said it's out for delivery". Redacted replied, "Bro everyday u say it's a

package just leave me alone bro". At approximately 10:52 a.m., CARTAGENA-COLON sent,

"I'll be there I'm wit Nonie". As previously reported, case agents later observed CARTAGENA-

WARRANTS_000001.38

COLON take possession of SUBJECT PARCEL 37 at 4122 W. Orchard Street after it was delivered. Based on this investigation, case agents believe SUBJECT PARCEL 37 was a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine.

57.     On February 26, 2025, UM-1 was depicted on Post Office surveillance video in Sabana Seca, Puerto Rico, while operating a silver Honda Accord with tinted windows bearing Puerto Rico license plate Redacted registered to Redacted shipping USPS Priority Mail parcel 9505510336375057550372 ("SUBJECT PARCEL 38"). SUBJECT PARCEL 38 was a USPS large flat rate parcel weighing approximately 8 lbs. 9 oz. The shipping label for SUBJECT PARCEL 38 indicated it was from "Hector Figueroa Ext La Inmaculada DD10 Calle 4 Toa Baja PR 00949". SUBJECT PARCEL 38 bore a handwritten label addressed to "Crystal Blythe 3909 N. 36th St, Milwaukee W.I. 53216". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. Based on this investigation, case agents believe SUBJECT PARCEL 38 was a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine.

58.     On March 4, 2025, an unknown Hispanic male was depicted on Post Office surveillance video in Sabana Seca, Puerto Rico, shipping USPS Priority Mail parcel 9505510336365063924922 ("SUBJECT PARCEL 39"). This male subject was the front seat passenger in a silver Honda Accord with tinted windows, which is known to be associated with Redacted SUBJECT PARCEL 39 was a USPS large flat rate parcel weighing approximately 8 lbs. 7 oz. The shipping label for SUBJECT PARCEL 39 indicated it was from "Jafet Ortiz Calle Perla del Sur I 28 Reparto Flamingo Bayamon PR 00959". SUBJECT PARCEL 39 bore a handwritten label addressed to "Hector Rodriguez 2654 S. Tenth St. Milwaukee WI 53215". A search of the CLEAR database indicated the recipient's name shown on the shipping

38

WARRANTS_000001.39

label was fictitious. The same sender's address shown for SUBJECT PARCEL 39 was previously seen on multiple parcels related to this investigation, including the sender's address for SUBJECT PARCEL 32, which parcel contained approximately one kilogram of suspected cocaine.

59.     On March 6, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 39. At approximately 9:15 a.m., case agents observed the gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 **("SUBJECT PREMISE 8")** being operated by PEREZ, parked approximately one block south of the parcel's destination address. PEREZ's vehicle was positioned in a manner so PEREZ could observe 2654 S. 10th Street in order to potentially conduct counter surveillance. While conducting surveillance in the area of 2654 S. 10th Street, additional case agents were conducting surveillance at 2475 South 5th Street ("**SUBJECT PREMISE 2**"). At approximately 9:41 a.m., case agents observed MONTERO arrive to the residence in a white Dodge Avenger. MONTERO was seen using keys to unlock the front door of **SUBJECT PREMISE 2** to enter the residence. At approximately 9:45 a.m., the USPS Letter Carrier arrived in the area of 2654 S. 10th Street and began delivering mail. At approximately 9:47 a.m., PEREZ repositioned his gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 and parked in front of 2654 S. 10th Street. PEREZ then exited the gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 and was allowed into the residence by a subject later identified as UM-2, who took possession of SUBJECT PARCEL 20 and placed it inside of PEREZ's Nissan sedan, as mentioned above. At approximately 9:49 a.m., PEREZ exited the residence and got back into the driver's seat of the gray 2019 Honda Accord **("SUBJECT PREMISE 8")**. At approximately 10:01 a.m., the Letter Carrier delivered SUBJECT PARCEL 39 to UM-2. UM-2 walked towards PEREZ's gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 with SUBJECT PARCEL 39 and gave SUBJECT PARCEL 39 to PEREZ

39

WARRANTS_000001.40

through the front driver window. PEREZ then drove the gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 out of the area while in possession of SUBJECT PARCEL 39. Case agents continued surveillance by following behind the gray 2019 Honda Accord bearing Wisconsin license plates AVH4781. That vehicle drove directly to the area of **SUBJECT PREMISE 2**. Case agents witnessed PEREZ exit the vehicle with SUBJECT PARCEL 39 and enter the front door of **SUBJECT PREMISE 2** with SUBJECT PARCEL 39. Based on this investigation, case agents believe SUBJECT PARCEL 39 was a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine.

60.     On March 6, 2025, ███ Redacted ███ was depicted on Post Office surveillance video in Bayamon, Puerto Rico, shipping USPS Priority Mail parcel 9505512222105065053891 ("SUBJECT PARCEL 40"). SUBJECT PARCEL 40 was a USPS large flat rate parcel weighing approximately 8 lbs. 9 oz. The shipping label for SUBJECT PARCEL 40 indicated it was from "Bryan Rojas Calle 25 V5 Urb. Royal Town Bayamon PR 00956". SUBJECT PARCEL 40 bore a handwritten label addressed to "Vanessa Citro 2155 S 18th St. Milwaukee WI 53215". SUBJECT PARCEL 40 was delivered on March 8, 2025, at approximately 1:00 p.m. A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. The destination address of SUBJECT PARCEL 40 is located directly across the street from CARTAGENA-COLON's stash house located at 2158 South 18th Street ("**SUBJECT PREMISE 4**"). On March 10, 2025, case agents were monitoring the GPS data for the location of CARTAGENA-COLON's black 2018 Chevrolet Impala **("SUBJECT PREMISE 7")**. The historical data for March 8, 2025, showed the black 2018 Chevrolet Impala was in the area of the destination address, 2155 S 18th Street, of SUBJECT PARCEL 40 prior to its delivery. Approximately three minutes after SUBJECT PARCEL 40 was delivered,

WARRANTS_000001.41

CARTAGENA-COLON's black 2018 Chevrolet Impala then left the area and did not return for the remainder of the day. Case agents believe CARTAGENA-COLON was in the area to take possession of SUBJECT PARCEL 40 after it was delivered. Based on this investigation, case agents believe SUBJECT PARCEL 40 is a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine.

61.     On March 8, 2025, CARTAGENA-COLON's Apple Inc. account associated with 414-309-5124 shows that CARTAGENA-COLON was messaging ██Redacted██ about a parcel. The date of these texts is the same date USPS Priority Mail parcel 9505512222105065053891 ("SUBJECT PARCEL 40") was delivered. At approximately 10:21 a.m., ██Redacted██ sent, "What is it about the pack. I been checking and I got the curtain by the door open" and "Is the pack coming today or nah". From their training and experience, case agents know "pack" is a term used by drug traffickers to refer to drug laden packages. At approximately 11:48 a.m. ██Redacted██ said, "You in da front and dnt even think to say hi to baby ha. Like who does that? Smfh". CARTAGENA-COLON replied, "Unlock the door so I can use the bathroom". ██Redacted██ stated, "It's your house right go ahead". Case agents believe CARTAGENA-COLON was conducting counter surveillance outside of the residence ██Redacted██ was inside. SUBJECT PARCEL 40 was delivered at approximately 1:00 p.m.

62.     On March 6, 2025, UM-1 was depicted on Post Office surveillance video in Bayamon, Puerto Rico, shipping USPS Priority Mail parcel 9505510690115065678133 ("SUBJECT PARCEL 41"). SUBJECT PARCEL 41 was a USPS large flat rate parcel weighing approximately 8 lbs. 5 oz. The shipping label for SUBJECT PARCEL 41 indicated it was from "Javier Pagan Calle Perla del Sur I28 Reparto Flamingo Bayamon PR 00959". SUBJECT PARCEL 41 bore a handwritten label addressed to "Robert Schneider 2828 W. National Ave

41

WARRANTS_000001.42

Milwaukee WI 53215". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. A review of the Wisconsin DOT records indicated the destination address for SUBJECT PARCEL 41, 2828 W. National Avenue, is similar to the address on record for MONTERO, 2828 W. National Avenue, Unit 2. SUBJECT PARCEL 41 was shipped on the same day from a different Post Office from where SUBJECT PARCEL 40 was shipped, as detailed below. The distance between the two Post Offices used to ship SUBJECT PARCEL 40 and SUBJECT PARCEL 41 is approximately a 6-minute drive. SUBJECT PARCEL 40 was postmarked approximately 6 minutes before SUBJECT PARCEL 41. From case agents training and experience, they believe these subjects, **Redacted** and UM-1, shipping these parcels intentionally visited two different nearby Post Offices in an attempt to conceal their participation, and the contents of the parcels. Based on this investigation, case agents believe both SUBJECT PARCEL 40 and SUBJECT PARCEL 41 were drug parcels, consistent with other drug parcels containing approximately 1 kilogram of cocaine.

63. On March 7, 2025, case agents were monitoring the GPS data for the location of the black 2018 Chevrolet Impala bearing Wisconsin license plates AUC98431 **("SUBJECT PREMISE 7")**, which is commonly operated by CARTAGENA-COLON.[2] At approximately 10:17 a.m., the data showed the black 2018 Chevrolet Impala was parked at 214 E. Clarke Street ("**SUBJECT PREMISE 1**"). At approximately 10:45 a.m., case agents began to conduct physical surveillance in this area. At approximately 12:36 p.m., CARTAGENA-COLON exited the front door of 214 E. Clarke Street and entered the driver's seat of the black 2018 Chevrolet Impala.

---

[2] On February 27, 2025, DEA Task Force Officer Robert Gregory applied for and received a tracking warrant for an electronic tracker to be placed on a black 2018 Chevrolet Impala bearing Wisconsin license plates AUC9843. This vehicle has been observed being driven by CARTAGENA-COLON on multiple occasions. On April 14, 2025, Task Force Officer Gregory applied for and received a tracking warrant extension for an electronic tracker to be placed on a black 2018 Chevrolet Impala bearing Wisconsin license plates AUC9843.

MONTERO was then seen exiting the front door of **SUBJECT PREMISE 1** and walk towards the black 2018 Chevrolet Impala. As MONTERO did this, case agents observed the impression of a long, slender, and rigid object that extended from his chest down to his waistband area, concealed under his hooded sweatshirt. The object appeared to move from side to side as MONTERO walked down the steps. At one point, MONTERO put his hands into his front sweatshirt pockets as if to secure the object from swaying through his clothes. As MONTERO walked on the sidewalk towards the black 2018 Chevrolet Impala, case agents observed the top of the object was flat, consistent with the butt stock of a rifle, and a slender object ran perpendicular from the longer object, towards MONTERO's left side, consistent with the handle of a rifle. MONTERO entered the front passenger seat of the black 2018 Chevrolet Impala. The black 2018 Chevrolet Impala then drove away from the residence, westbound on W. Clarke Street out of view. The GPS data for the black 2018 Chevrolet Impala showed the vehicle drove directly to 2158 S. 18th Street ("**SUBJECT PREMISE 4**") and parked in the rear alley.

64.    Chat conversation #53 from CARTAGENA-COLON's Apple Inc. account associated with 414-309-5124 was between CARTAGENA-COLON and "Senia". Senia was using phone number [Redacted] A review of Cash App records showed [Redacted] had a Cash App profile associated with " [Redacted] and a "$cashtag" name of [Redacted] A review of the Wisconsin Department of Transportation records revealed a CASTILLO has an address on record of [Redacted] Milwaukee, Wisconsin. This is the same destination address for USPS Priority Mail parcel 950551 [Redacted] ("SUBJECT PARCEL [Redacted] On March 13, 2025, [Redacted] and CARTAGENA-COLON had an extensive conversation about the "mail man". [Redacted] sent: "Talk to the mail man his truck on the corner of grant but I know he out but when he get to that truck just ask if can double check cuz it's been days" and

WARRANTS_000001.44

"Yes I even checked the neighbors door in case of an accident". Case agents suspect they were referencing SUBJECT PARCEL 41 due to USPS having a delayed delivery date by several days. The parcel was originally supposed to be delivered around March 8, 2025. Later in the conversation CARTAGENA-COLON sent: "U think ur mom still Koo wit the landlord at the building", "Yea cuz they got cameras everywhere here", and "Shud be able to c if sumone took it here." Redacted later replied: "Ha even if i pop up at a stranger house and ask to c his camer at 939 then when the mailman came to c if came they all Mexican and speak Spanish why can Nonie ass do it. I'll knock on any other door but to ask to check their cameras is a bit fuckin much wait til I call the fuckin building. You trying to catch a attitude with me when I been fuckin checking every 5 mins for days. Dnt do that I dnt like the way you talk to me. This not my fuck up this Nonie ass so get slick with him not me. SMFH". Case agents believe Redacted and CARTAGENA-COLON may have thought SUBJECT PARCEL 41 was stolen after it was delivered, and they wanted to view the property manager's surveillance video to see who took the parcel.

65.     Chat conversation #30 from CARTAGENA-COLON's Apple Inc. account associated with 414-309-5124 was between CARTAGENA-COLON and "Angie". Angie was using phone number Redacted A review of Cash App records showed Redacted had a Cash App profile associated with Redacted and a "$cashtag" name of Redacted Redacted s the mother of MONTERO and a Wisconsin DOT address of Redacted 5th Street ("**SUBJECT PREMISE 2**"). The date of this text conversation, March 8, 2025, was the original expected delivery date of USPS Priority Mail parcel 9505510690115065678133 ("SUBJECT PARCEL 41"). At approximately 2:43 p.m. Redacted sent the following message: "Nonie I am not stressing her to get me those I already told her I needed them WE DON'T even live there so I'm not finna piss her off and she don't send shit she already

WARRANTS_000001.45

didn't get paid for 3mos of moms rent and ain't stressing me out with nothing that has happened I made it clear I need them so when she sends I'll send them plz don't stay posted out there". Minutes later, **Redacted** also sent the following message: "I wish that addy never used or I know about it I would had been out there this involves ALL of us now smdh". Case agents believe SUBJECT PARCEL 41 was addressed to **Redacted** s mother's residence and **Redacted** appears a suspected cocaine laden parcel was being delivered to this location. CARTAGENA-COLON said: "I didn't even knw ma fr fr". Angie replied: "I'm not going back and forth with her and he needs to wait it doesn't matter he CANNOT run in that house when my moms "lives" down there so regardless sitting there ain't changing nothing at the moment need to chill and figure shit out". At approximately 3:07 p.m., CARTAGENA-COLON sent: "I don't think he delivered it to be real". Case agents believe **Redacted** was worried SUBJECT PARCEL 41 was not yet delivered, and she did not want her son, MONTERO, to be sitting outside the residence. See chat conversation #39 and #53 below for additional information that appears to be related to SUBJECT PARCEL 41.

66.    Case agents reviewed law enforcement intelligence files and discovered that PEREZ's gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 **("SUBJECT PREMISE 8")** parks in the area of S. 33rd Street and W. Montana Avenue. On a few occasions, the data reflected that the vehicle was parked in front of a garage for 2832 S. 33rd Street ("**SUBJECT PREMISE 5**"). Case agents conducted a check of 2832 S. 33rd Street through law enforcement intelligence files and discovered the residence belongs to **Redacted** who is the girlfriend of PEREZ. Case agents reviewed PEREZ' Facebook Profile and discovered a photograph of PEREZ and **Redacted** The photo was posted on October 23, 2024. In the comment section of the photograph, Facebook Profile "**Redacted**" left a comment. Case agents reviewed the Facebook profile photograph of **Redacted** and positively identified the

WARRANTS_000001.46

female in the profile as ███Redacted███  On March 11, 2025, case agents conducted surveillance at **SUBJECT PREMISE 5**. At approximately 12:58 p.m., ██Redacted██ was observed parking her vehicle in the area and walked towards the garage of **SUBJECT PREMISE 5**, which simultaneously opened, and she entered. The overheard garage door then closed behind her. On March 14, 2025, case agents again conducted surveillance at this location. At approximately 12:34 p.m., what appeared to be the same white Nissan sedan bearing license plates ATF1684 pulled into the driveway. PEREZ exited the Nissan and walked to the alcove leading to the main entry door to **SUBJECT PREMISE 5**, just out of view. The Nissan appeared to be the same vehicle that took possession of SUBJECT PARCEL 20 as described above.

67.     On March 24, 2025, USPS Priority Mail parcel 9505510336365083932471 ("SUBJECT PARCEL 42") was shipped from Sabana Seca, Puerto Rico. SUBJECT PARCEL 42 was a USPS large flat rate parcel weighing approximately 8 lbs. 1 oz. The shipping label for SUBJECT PARCEL 42 indicated it was from "Emanuel Ortiz Ext. La Imaculada Calle Santa Fe DD9 Toa Baja PR 00949". SUBJECT PARCEL 42 bore a handwritten label addressed to "Devin Wright 2825 S. Ninth St. Milwaukee W.I. 53215". A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. This parcel was later linked to ███████Redacted███████ and MONTERO through WhatsApp, as detailed below. Based on this investigation, case agents believe SUBJECT PARCEL 42 is a drug parcel containing approximately 1 kilogram of cocaine

68.     On April 28, 2025, USPS Priority Mail parcel 9505516209495118541510 ("SUBJECT PARCEL 43") was shipped from San Juan, Puerto Rico. SUBJECT PARCEL 43 was a USPS parcel weighing 6 lbs. 10 oz. The shipping label for SUBJECT PARCEL 43 indicated it was from "Jaime Maldonado 1347 Calle 16 San Juan PR 00920". SUBJECT PARCEL 43 bore

a handwritten label addressed to "Anthony Masalew 2535 S 60th St Milwaukee WI 53219". A search of the CLEAR database indicated both the sender and recipient names shown on the shipping label were fictitious. SUBJECT PARCEL 43 was found to be monitored by a WhatsApp IP associated to PEREZ as described below. On May 5, 2025, I intercepted SUBJECT PARCEL 43 at the Milwaukee Processing and Distribution Center. On May 6, 2025, U.S. Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin issued a warrant to search SUBJECT PARCEL 43. Upon executing the search warrant on SUBJECT PARCEL 43, case agents discovered a white powdery substance still in brick-like form, which had a gross weight of approximately 1,025 grams and field tested positive for the presence of cocaine.

69. On April 30, 2025, USPS Priority Mail parcel 9505511416265120773857 ("SUBJECT PARCEL 44") was shipped from San Juan, Puerto Rico. SUBJECT PARCEL 44 was a USPS parcel weighing 6 lbs. 7 oz. The shipping label for SUBJECT PARCEL 44 indicated it was from "Kevin Cruz Calle Maria L Gomez WF 22 Sta. Juanita Bayamon 00956." SUBJECT PARCEL 44 bore a handwritten label addressed to "Jose Bailey 3409 W Wilbur Ave. Milwaukee, WI 53221." SUBJECT PARCEL 44 was delivered on May 2, 2025, at approximately 12:40 p.m. A search of the CLEAR database indicated the recipient's name shown on the shipping label was fictitious. The sender's name could not be verified. SUBJECT PARCEL 44 was found to be monitored by a WhatsApp IP associated to PEREZ, as described below.

70. Case agents reviewed the historical GPS data for the location of CARTAGENA-COLON's black 2018 Chevrolet Impala bearing Wisconsin license plates AUC9843 **("SUBJECT PREMISE 7")**, on the day SUBJECT PARCEL 44 was delivered. On May 2, 2025, at approximately 12:56 p.m., the data showed the black 2018 Chevrolet Impala was stopped in front of 3415 W. Wilbur Avenue. This residence is approximately one house west of the destination

47

WARRANTS_000001.48

address for SUBJECT PARCEL 44. At approximately 12:58 p.m., this vehicle then left the area and drove to the area of CARTAGENA-COLON's residence, 719 W. Madison Street ("**SUBJECT PREMISE 3**"). Based on this investigation, case agents believe both SUBJECT PARCEL 44 was a drug parcel, consistent with other drug parcels containing approximately 1 kilogram of cocaine.

71.    In **Redacted** s cell phone extraction, there was a picture taken of a cell phone showing a cell phone "note" with the following addresses shown: Urb. MiraFlores Calle 15 Bloq. 4-44, Bayamon, PR 00957 ("Address 1"); Urb. Reparto Santa Teresita M15 Calle 25, Bayamon, PR 00956 ("Address 2"); Bo. Volcan Arenas 239 Carr 871, Bayamon, PR 00961-4716 ("Address 3"); Urb. Santa Teresita Calle 10 E-14, Bayamon, PR 00961 ("Address 4"). All of these Puerto Rico addresses, except for Address 3, have been used on several of the suspected cocaine laden parcels shipped from Puerto Rico to Milwaukee. Post Office surveillance video showed **Redacted** shipping SUBJECT PARCEL 21 with Address 1 as the sender's address. Post Office surveillance video showed **Redacted** shipping SUBJECT PARCEL 22, which was seized by case agents, with Address 2 as the sender's address. Address 4 was shown on a previous suspicious parcel from Puerto Rico shipped to an address in Milwaukee suspected of being utilized by **Redacted** prior to his arrest.

72.    An image of a taped shut USPS Priority Mail flat parcel addressed to Shakira Enid Boria, 5021 Commander Drive, Apartment 415, Orlando, Florida 32822, was located in **Redacted** **Redacted** s phone. I conducted a search of the USPIS records which showed on March 12, 2024, a Postal Inspector based in Puerto Rico received a search warrant, issued by U.S. Magistrate Judge Giselle Lopez-Soler in the District of Puerto Rico, to search USPS Priority Mail parcel 9505510540964066447394. This parcel was also addressed to the same recipient's name and address as found in the image in **Redacted** s cell phone. Upon execution of the search

48

WARRANTS_000001.49

warrant, one brick shaped white powdery substance, which field tested positive for cocaine, was located in the parcel. The suspected cocaine had a gross weight of approximately 1,080 grams.

73. On February 20, 2025, U.S. Magistrate Judge Nancy Joseph, Eastern District of Wisconsin, issued a court order for a WhatsApp LLC pen register trap and trace device for both 939-324-5219 and 414-712-4799.

74. The data provided to case agents by WhatsApp for 939-324-5219 showed various unique and specific routing prefixes and subnet identifications were used while accessing WhatsApp. I conducted a review of USPS business records which showed these same routing prefix and subnet identifications were used to monitor the following USPS parcels: 9505510336375034537808 ("SUBJECT PARCEL 30"); 9505510690115041664938 ("SUBJECT PARCEL 32"); 9505512222085043969720 ("SUBJECT PARCEL 33"); 9505510690125055119799 ("SUBJECT PARCEL 36"); and, 9505510336365083932471 ("SUBJECT PARCEL 42").

75. The data provided to case agents by WhatsApp for 414-712-4799 showed various unique and specific routing prefixes and subnet identifications were used while accessing WhatsApp. I conducted a review of USPS business records which showed these same routing prefix and subnet identifications were used to monitor the following USPS parcels: 9505510336375021530034 ("SUBJECT PARCEL 27"); 9505510690125027094604 ("SUBJECT PARCEL 29"); 9505510336375034537808 ("SUBJECT PARCEL 30"); 9505510336375041542512 ("SUBJECT PARCEL 31"); 9505510690115041664938 ("SUBJECT PARCEL 32"); 9505512222085043969720 ("SUBJECT PARCEL 33"); 9505512222105045044871 ("SUBJECT PARCEL 34"); 9505510690125055119799 ("SUBJECT PARCEL 36"); 9505510336375056549902 ("SUBJECT PARCEL 37");

WARRANTS_000001.50

9505510336375057550372 ("SUBJECT PARCEL 38"); 9505510336365063924922 ("SUBJECT PARCEL 39"); 9505512222105065053891 ("SUBJECT PARCEL 40"); 9505510690115065678133 ("SUBJECT PARCEL 41"); and, 9505510336365083932471 ("SUBJECT PARCEL 42").

76. On March 11, 2025, U.S. Magistrate Judge William Duffin in the Eastern District of Wisconsin issued a court order for a WhatsApp LLC pen register trap and trace device for 414-275-7839 used by Leonardo PEREZ. The data provided to case agents by WhatsApp for 414-275-7839 showed various unique and specific routing prefixes and subnet identifications were used while accessing WhatsApp. I conducted a review of USPS business records which showed these same routing prefix and subnet identifications were used to monitor the following USPS parcels: 9505510690115065678133 ("SUBJECT PARCEL 41"); 9505516209495118541510 ("SUBJECT PARCEL 43"); and 9505511416265120773857 ("SUBJECT PARCEL 44").

77. On May 21, 2025, I conducted surveillance on Javier CARTAGENA-COLON's residence at 719 W. Madison Street, Milwaukee, Wisconsin ("**SUBJECT PREMISE 3**"). That morning, I observed a black 2018 Chevrolet Impala bearing Wisconsin license plates AUC9843 (**"SUBJECT PREMISE 7"**) park on the rear parking slab directly behind 719 W. Madison Street. CARTAGENA-COLON then exited the driver's door and walked out of view toward the residence. Several minutes later, CARTAGENA-COLON emerged from the backyard of 719 W. Madison ("**SUBJECT PREMISE 3**") and sat in the driver's seat of (**"SUBJECT PREMISE 7"**). CARTAGENA-COLON then drove **SUBJECT PREMISE 7** directly to the rear alley behind 2158 S. 18th Street, Milwaukee, Wisconsin ("**SUBJECT PREMISE 4**") and parked on the rear parking slab behind this residence. The GPS monitoring device attached to **SUBJECT PREMISE 7** showed it left 2158 S. 18th Street at approximately 12:11 p.m. Case agents have only ever

50

WARRANTS_000001.51

observed CARTAGENA-COLON driving **SUBJECT PREMISE 7**, and the GPS monitoring device attached to **SUBJECT PREMISE 7** regularly shows **SUBJECT PREMISE 7** parked in the vicinity of **SUBJECT PREMISE 3** at night, consistent with residing there.

78.     On May 22, 2022, I conducted surveillance on Leonardo PEREZ's residence at 2832 S. 33rd Street, Milwaukee, Wisconsin ("**SUBJECT PREMISE 5**"). I observed a white 2020 Nissan Altima bearing Wisconsin license plates ATF1684 park directly in front of the garage door for 2832 S. 33rd Street. This is the same vehicle previously seen by case agents while conducting surveillance on the delivery of SUBJECT PARCEL 20. I then observed PEREZ's apparent mother Redacted exit the front passenger door of the Nissan and walk out of view towards the alcove leading to the main entry door for 2832 S. 33rd Street. I identified Redacted by comparing her to her Wisconsin Department of Transportation driver's license photograph and her pictures from her suspected Facebook profile Redacted, where she posts about PEREZ's birthday referring to him as her child. Shortly thereafter, PEREZ's mother emerged from the front door alcove area of the residence and sat back in the front passenger seat of the Nissan. The Nissan then left the area. The driver of the Nissan appeared to be an unknown middle aged black male who was shown with Weary in multiple of her Facebook photographs. Shortly thereafter, the garage door for 2832 S 33rd Street (**"SUBJECT PREMISE 5"**) opened and a gray 2019 Honda Accord bearing Wisconsin license plates AVH4781 (**"SUBJECT PREMISE 8"**) backed out of the garage and left the area. I observed PEREZ as the driver of the vehicle **SUBJECT PREMISE 8**. I queried USPS business records and determined that Weary, along with Redacted, still actively receives mail at **SUBJECT PREMISE 6** as of today.

Case 2:25-mj-00085-WED     Filed 06/10/25     Page 52 of 74     Document 2

WARRANTS_000001.52

79.     On May 27, 2025, I conducted surveillance on MONTERO's residence **SUBJECT PREMISE 1**. I observed a black male approach the residence, and then observed MONTERO standing on the second-floor porch of **SUBJECT PREMISE 1**. MONTERO threw a set of keys down to the unknown black male, and then went back into the residence through the second-floor porch door. The unknown black male then used the keys that MONTERO had thrown to open the front door of **SUBJECT PREMISE 1** and let himself into the house.

80.     Based on the foregoing, I respectfully request that this Court issue a search warrant for the locations described in Attachments A authorizing the seizure and search of the items described in Attachment B.

## I.     COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

81.     As described above and in Attachment B, this application seeks permission to search for records that might be found on, in, or at the **SUBJECT PREMISES**, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

82.     *Probable cause*. I submit that if a computer or storage medium is found on the **SUBJECT PREMISES**, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

      a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because

WARRANTS_000001.53

when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

83. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **SUBJECT PREMISES** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record

WARRANTS_000001.54

information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.   As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.   A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions

54

WARRANTS_000001.55

about how computers were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.      I know that when an individual uses a computer to operate a website that is used for illegal conduct, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

84.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a property for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the **SUBJECT PREMISES**, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage

55

WARRANTS_000001.56

media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on the **SUBJECT PREMISES** could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the **SUBJECT PREMISES**. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

85. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

86. Because multiple people may share the **SUBJECT PREMISES** as a residence, it is possible that the **SUBJECT PREMISES** will contain storage media that are predominantly

WARRANTS_000001.57

used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## II.     BIOMETRIC ACCESS TO DEVICES

87.     This warrant permits law enforcement to compel residents of the **SUBJECT PREMISES** to unlock any devices requiring biometric access subject to seizure pursuant to this warrant. The grounds for this request are as follows:

    a. I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

    b. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID. Apple also offers a feature called "Face ID," which allow a user to register multiple faces that can unlock a device, by displaying that face to the device's camera.

    c. If a device is equipped with a facial-recognition feature, a user may enable the ability to unlock the device through his or her face. For example, this feature is available on certain Android devices and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face. The device's front-facing camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the front-facing camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Trusted Face.

57

d. If a device is equipped with an iris-recognition feature, a user may enable the ability to unlock the device with his or her irises. For example, on certain Microsoft devices, this feature is called "Windows Hello." During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face. The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises. The device can then be unlocked if the infrared-sensitive camera detects the registered irises. Iris-recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

e. In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

f. As discussed in this affidavit, I believe one or more digital devices will be found during the search. The passcode or password that would unlock the devices subject to search under this warrant currently is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the devices, making the use of biometric features necessary to the execution of the search authorized by this warrant.

g. I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when: (1) more than 48 hours has elapsed since the device was last unlocked; or, (2) when the device has not been unlocked using a fingerprint for 8 hours *and* the passcode or password has not been entered in the last 6 days. Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

88. Due to the foregoing, if law enforcement personnel encounter any devices that are subject to seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, this warrant permits law enforcement personnel to: (1) press or swipe the

WARRANTS_000001.59

fingers (including thumbs) of the targets of the investigation, specifically MONTERO, CARTAGENA-COLON, and PEREZ, to the fingerprint scanner of the devices; (2) hold the devices found in front of the face of the targets of the investigation, specifically MONTERO, CARTAGENA-COLON, and PEREZ, and activate the facial recognition feature; and/or (3) hold the devices found in front of the face of the targets of the investigation, specifically MONTERO, CARTAGENA-COLON, and PEREZ, and activate the iris recognition feature, for the purpose of attempting to unlock the devices in order to search the contents as authorized by this warrant. The proposed warrant does not authorize law enforcement to compel the targets of the investigation to state or otherwise provide the password or any other means that may be used to unlock or access the devices. Moreover, the proposed warrant does not authorize law enforcement to compel the targets of the investigation to identify the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

**CONCLUSION**

Based on the foregoing, I respectfully request that this Court issue a search warrant for the locations described in Attachment A authorizing the seizure and search of the items described in Attachment B.

59

WARRANTS_000001.60

<u>**ATTACHMENT A1**</u>

**Property to be searched**

The property to be searched is the premises located at **214 E. Clarke Street, Milwaukee, Wisconsin** ("**SUBJECT PREMISE 1**"), a multi-family residence with off-white siding and green trim, and a dark colored green roof. The numbers "214" are fixed to the south side of the residence above the front door. The front door of the residence faces south. The search to include all associated common spaces, basement, garage, outbuildings, and electronic devices.



WARRANTS_000001.61

**ATTACHMENT A2**

**Property to be searched**

The property to be searched is the premises located at **2475 S. 5th Street, Milwaukee, Wisconsin** ("**SUBJECT PREMISE 2**"), a single-family residence with off-white siding and off-white trim, and a dark colored roof. The numbers "2475" are fixed to the east side of the residence next to the front door. The front door of the residence faces east. The search to include all associated common spaces, basement, garage, outbuildings, and electronic devices.



Case 2:25-mj-00085-WED    Filed 06/10/25    Page 62 of 74    Document 2

WARRANTS_000001.62

## ATTACHMENT A3

### Property to be searched

The property to be searched is the premises located at **719 W. Madison Street, Milwaukee, Wisconsin** ("**SUBJECT PREMISE 3**"), a multi-family residence with off-white siding and light-colored trim, and a dark colored roof. The numbers "719" are fixed to a wood post on the front porch of the residence in front of the front door. The front door of the residence faces north. The search to include all associated common spaces, basement, garage, outbuildings, electronic devices, and a black 2018 Chevrolet Impala bearing Wisconsin license plates AUC9843.



WARRANTS_000001.63

## ATTACHMENT A4

### Property to be searched

The property to be searched is the premises located at **2158 S. 18th Street, Milwaukee, Wisconsin** ("**SUBJECT PREMISE 4**"), a multi-family residence with light colored siding and a red brick façade, and a dark colored roof. The numbers "2158" are fixed to the front of the residence near the steps to the front porch in front of the front door. The front door of the residence faces west. The search to include all associated common spaces, basement, garage, outbuildings, electronic devices, and a black 2018 Chevrolet Impala bearing Wisconsin license plates AUC9843.



Case 2:25-mj-00085-WED    Filed 06/10/25    Page 64 of 74    Document 2

WARRANTS_000001.64

**ATTACHMENT A5**

**Property to be searched**

The property to be searched is the premises located at **2832 S. 33rd Street, Milwaukee, Wisconsin** ("**SUBJECT PREMISE 5**"), a single-family residence with light colored siding, a green garage door, a red brick façade, and a dark colored roof. The numbers "2832" are fixed to the southside of the residence above the attached garage door and above the front door. The front door of the residence faces south. The search to include all associated common spaces, basement, garage, outbuildings, electronic devices, and a gray 2019 Honda Accord bearing Wisconsin license plate AVH4781.



Case 2:25-mj-00085-WED    Filed 06/10/25    Page 65 of 74    Document 2

WARRANTS_000001.65

## ATTACHMENT A6

### Property to be searched

The property to be searched is the premises located at **6519 W. Wisconsin Avenue, Wauwatosa, Wisconsin** ("**SUBJECT PREMISE 6**"), a multi-family residence with light colored stone façade, light colored trim, and light colored roof. The numbers "6519" are fixed to the northside of the residence next to the front door near the northwest corner. The front door of the residence faces north. The search to include all associated common spaces, basement, garage, outbuildings, electronic devices, and a gray 2019 Honda Accord bearing Wisconsin license plate AVH4781.



WARRANTS_000001.66

**ATTACHMENT A7**

**Property to be searched**

The property to be searched is a black 2018 Chevrolet Impala bearing Wisconsin license plates

AUC9843 **("SUBJECT PREMISE 7").**





66

WARRANTS_000001.67

**ATTACHMENT A8**

**Property to be searched**

The property to be searched is a gray 2019 Honda Accord bearing Wisconsin license plates

AVH4781 **("SUBJECT PREMISE 8").**





WARRANTS_000001.68

## ATTACHMENT B

### Property to be Seized

1.      Paraphernalia associated with the manufacture and distribution of controlled substances including but not limited to materials and items used for packaging, processing, diluting, weighing, and distributing controlled substances;

2.      Duffel, canvas bags, suitcases, safes, or other containers to hold or transport controlled substances and drug trafficking related items and proceeds;

3.      Proceeds of drug trafficking activities, such as United States currency, precious metals, financial instruments, and jewelry, and documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, cryptocurrency, jewelry, or other items obtained with the proceeds from drug trafficking activities;

4.      Records and information relating to the purchase, sale, shipment, handling, importation, or distribution of cocaine and fentanyl, and any other controlled substance, including but not limited to bills, invoices, receipts, shipping documents, purchase orders, letters, notes, and order forms, lists of contacts and any identifying information; photographs, videos, or other media storage connected to controlled substances; types, amounts, and prices of controlled substances purchased/sold; any information related to sources or purchasers of controlled substances (including names, addresses, phone numbers, or any other identifying information);

5.      Firearms, ammunition, cases, or firearm accessories and documents showing firearm possession or ownership, to include but not limited to CCW permit and firearm purchase/acquisition documents;

68

WARRANTS_000001.69

6. Indicia of unlawful possession, use, or distribution of controlled substances, including but not limited to paraphernalia and evidence known to be associated with drug trafficking and/or drug possession;

7. USPS packaging materials, or other documents and items related to shipping or mailing;

8. Evidence of recent cash expenditures;

9. Bank account records, loan documents, wire transfer records, money order receipts, bank statements, safe deposit box keys and records, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of controlled substances, or financial transactions related to the trafficking of controlled substances;

10. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when controlled substances were obtained, transferred, sold, distributed, and/or concealed;

11. Identification and location of assets obtained with drug proceeds;

12. All records, items, and documents reflecting travel for the purpose of participating in the aforementioned drug trafficking organization, including but not limited passports, airline tickets, bus tickets, vehicle rental receipts, credit card receipts, taxi cab receipts, hotel and restaurant receipts, canceled checks, maps, gas station receipts, store receipts, credit card receipts, restaurant receipts, maps, and records of long distance calls reflecting travel;

69

WARRANTS_000001.70

13. Indicia of occupancy, residency or ownership of the premises, vehicles, and things described in the warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, addressed envelopes, escrow documents and keys;

14. Records of off-site storage locations, including but not limited to safe deposit box keys and records, and records and receipts and rental agreements for storage facilities;

15. Photographs, videotapes or other depictions of assets, firearms, coconspirators, or controlled substances;

16. Cellular telephones, text messaging systems, other communication devices, and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and/or video recordings, pictures, settings, and any other user defined settings and/or data, as well as any records associated with such communications services used to commit drug trafficking offenses;

17. Computers, laptops, or other electronic storage device capable of being used to commit the violations or store any of the information described above.

18. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

19. All records and information relating to violations of Title 21, United States Code, Sections 841(a)(1) (manufacture, distribution, and possession with intent to distribute a controlled substance), 846 (conspiracy to manufacture, distribute, and possess with intent to distribute a controlled substance), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance) and Title 18, United States Code, Section 924(c)(1)(A), involving Redacted , Redacted

WARRANTS_000001.71

Jeronis MONTERO, Javier CARTAGENA-COLON, Leonardo PEREZ, and others, known or unknown, occurring after October 2022, including but not limited to:

a. Records and information relating to the existence, scope, overt acts, and members of a drug conspiracy.

b. Records and information relating to the possession, custody, or control of the relevant electronic devices and accounts, including accounts with electronic communication service provides and remote computing services; and

c. Records and information relating to the use of the U.S. Postal Service or other parcel, mailing, shipping, or delivery services;

d. Records and information relating to the identity or location of the suspects;

e. Records and information relating to Internet Protocol addresses;

f. Evidence showing custody, control, ownership, or possession of SUBJECT PREMISE 1, SUBJECT PREMISE 2, SUBJECT PREMISE 3, SUBJECT PREMISE 4, SUBJECT PREMISE 5, SUBJECT PREMISE 6, SUBJECT PREMISE 7, or SUBJECT PREMISE 8.

For any computer, cell phone, tablet, or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, for purposes of this Attachment B, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

71

WARRANTS_000001.72

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.

n. Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "COMPUTER" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

WARRANTS_000001.73

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, flash memory, CD-ROMs, and other magnetic or optical media.

During the execution of the search of the **SUBJECT PREMISES** described in Attachment A (Attachment A1, A2, A3, A4, A5, A6, A7, or A8), law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of the targets of the investigation, specifically MONTERO, CARTAGENA-COLON, and PEREZ, to the fingerprint scanner of the devices; (2) hold the devices found in front of the face of the targets of the investigation, specifically MONTERO, CARTAGENA-COLON, and PEREZ, and activate the facial recognition feature; and/or (3) hold the devices found in front of the face of the targets of the investigation, specifically MONTERO, CARTAGENA-COLON, and PEREZ, and activate the iris recognition feature, for the purpose of attempting to unlock the devices in order to search the contents as authorized by this warrant.

WARRANTS_000001.74